**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHELE L. SPIRO** and | : | |
| **RANDY WILFONG,** | : | **Civil Action No. 1:06-CV-834** |
| | : | |
| **Plaintiffs** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | |
| **PRUDENTIAL RELOCATION, INC.,** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM**

Pending before the Court is Defendant's motion for partial summary judgment on Counts II and III of Plaintiffs' complaint. The motion has been fully briefed and is ripe for disposition. For the reasons that follow, Defendant's motion will be granted in part and denied in part.

**I.     INTRODUCTION**

Plaintiffs Michele Spiro and her husband, Randy Wilfong, began this action by filing a Writ of Summons on April 28, 2005, in the York County Court of Common Pleas. After Defendant filed a Rule to File Complaint, Plaintiffs filed a complaint on April 4, 2006. Defendant timely removed the action to this Court pursuant to 28 U.S.C. § 1441 on the basis of diversity of citizenship.

Plaintiffs allege that at all times relevant to the complaint, Michele Spiro was a civilian employee of the United States Department of Defense ("DOD").[1]  (Compl. ¶ 4.)   At some unspecified time during her employment Michele Spiro agreed to DOD's request that she take a position within DOD that required her to live in Japan between August 2001 and July 2002.  (Id.

---

[1] Unless otherwise noted, the allegations in the complaint have been accepted as true for purposes of this background.  Additionally, the Court has accepted as true those facts set forth in Defendant's statement of undisputed facts that Plaintiffs have not contested.

¶ 5.)  Mr. Wilfong accompanied his wife during this period of relocation to Japan.  (Id. ¶ 6.)

DOD and Prudential Relocation, Inc. ("Defendant" or "Prudential") are parties to a

contract that requires Prudential to provide relocation and property management services to

civilian DOD employees who are relocated in connection with their employment under specified

circumstances.[2]  (Id. ¶ 3.)  In addition, on or about November 16, 2001, Defendant entered into a

separate contract with Michele Spiro dated November 16, 2001 ("Spiro Contract"), to provide

property-management services to Plaintiffs' residence during their relocation to Japan.[3]  (Id. ¶ 8;

Doc. No. 13, Decl. of Thomas Goodkind, Ex. B.)  Pursuant to the terms of these contracts,

Defendant agreed to manage Plaintiffs' residence at 265 Mt. Airy Road, Lewisberry, York

---

[2]  On or about September 30, 2001, Prudential Real Estate and Relocation Services, Inc.,
acquired CitiCapital Relocation, Inc., and later changed its name to Prudential Relocation, Inc.
(Doc. No. 13, Unsworn Declaration of Thomas Goodkind, ¶ 4.)  CitiCapital Relocation and its
predecessor in interest, Associates Relocation Management Company, Inc., had entered into
various contracts with DOD to provide property management services to relocated DOD
personnel.

[3]  Defendant has taken the position that Plaintiffs have not made any claim under the
Spiro Contract at least with respect to Count III of the complaint in which Plaintiffs allege that
Defendant violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law.  It
appears Defendant has taken this position because Plaintiff referred to a contract attached to the
complaint to support this claim and the attached contracts did not include the Spiro Contract.
(Doc. No. 14, at 4; Doc. No. 13, Unsworn Decl. of Thomas Goodkind, ¶ 6.)  Defendant has
appended to Thomas Goodkind's unsworn declaration what the parties agree is a true and correct
copy of the Spiro Contract.  (Goodkind Decl., Ex. B.)  Moreover, Plaintiffs have acknowledged
that they inadvertently attached a different contract to the complaint as evidence of the Spiro
Contract, and that the contract attached to the Goodkind Declaration is an accurate copy of the
Spiro Contract.  (Doc. No. 16, ¶ 5; Doc. No. 17, Unsworn Decl. of Michele Spiro, ¶ 6.)
Moreover, as discussed below, review of the terms of the Spiro Contract reveals that it includes
certain representations of Defendant that Plaintiffs have identified as misrepresentations for
purposes of their CPL claim.  In light of what appears clearly to have been a clerical error, and
because Defendant has produced a true and correct copy of the Spiro Contract that contains
language indicating that Plaintiffs intended to base at least some of their claims on this contract,
the Court cannot agree with Defendant's position that Plaintiffs have not asserted any claim
under the Spiro Contract.

County, Pennsylvania ("Property"), during the period of Plaintiffs' relocation.  (Compl. ¶ 10.)

Prudential then entered into an Agency Property Managment Agreement with Capital Area

Property Management under which Capital Area, together with Prudential, was to provide

various services under the DOD Contract.

Plaintiffs allege that "Defendant selected and/or approved Duane and Brenda Myers as

tenant's for the Property.  (Id. ¶ 14.)  According to Plaintiffs, Duane Myers was an undesirable

tenant due to his poor financial history and an undisclosed criminal history.  (Id. ¶ 23.)

Additionally, Plaintiffs contend that there were four additional adults and an unknown number of

minors living at the premises during the period that Defendant was providing relocation services.

(Id. ¶ 20.)  Plaintiffs allege that at some point the Myers, their sons, and unidentified other

individuals began "using the property for illegal purposes," including use as an automobile

"chop shop," thereby causing substantial damage to the Property.  (Id. ¶¶ 27-28.)

Plaintiffs' complaint presents three counts: breach of contract (Count I); negligence

(Count II); and violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law

("CPL") (Count III).  Count I alleges that Defendant breached both the DOD Contract and the

Spiro Contract.  Count II alleges that Defendant had a duty to Plaintiffs to enforce the terms of

the various contracts and that Defendant breached this duty.  Count III alleges that Defendant

made certain material representations to Plaintiffs regarding the property-management services

that Defendant would provide pursuant to the various contracts without any intention of

performing the services.

Defendant has moved for partial summary judgment on Counts II and III.  Specifically,

Defendant argues that Count II, which sounds in tort, is barred by the so-called "gist of the

action" rule adopted by Pennsylvania courts because the multiple contracts entered into

governing the provision of relocation services are not collateral to Plaintiffs' tort claim and

therefore Plaintiff must proceed in contract rather than tort.  With respect to Count III, Defendant

claims that Plaintiffs lack standing under the CPL because Plaintiffs were not "purchasers" of the

services at issue.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56; Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248-51 (1986).  When deciding a motion for summary judgment, the

Court views the facts in the light most favorable to the nonmoving party, who is "entitled to

every reasonable inference that can be drawn from the record."  Merkle v. Upper Dublin Sch.

Dist., 211 F.3d 782, 788 (3d Cir. 2000).  However, the nonmoving party may not simply sit back

and rest on the allegations in the complaint, but must "go beyond the pleadings and by her own

affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate

specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S.

317, 324 (1986) (internal quotations omitted).  Summary judgment should be granted where a

party "fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden at trial."  Id. at 322.

## III.   DISCUSSION

For purposes of the motion before the Court, the parties generally agree about the

material facts bearing upon the legal dispute, and the questions presented in Defendant's motion

are primarily legal:  (1) whether the "gist of the action rule" precludes Plaintiff from maintaining

both negligence and breach of contract claims and (2) whether Plaintiff can maintain a cause of

action under the CPL as a "purchaser" within the meaning of the statute where Plaintiff did not

purchase the services from Defendant directly, but rather obtained them pursuant to the terms of

an employment contract where the relocation services were part of Plaintiff Michele Spiro's

benefits of employment with DOD.  The Court will address both issues in turn.

### A.   Plaintiff's negligence claim is barred by the "gist of the action" rule.

Defendant first argues that Pennsylvania law precludes a plaintiff from bringing a

negligence claim where the complained-of injury arises out of defendant's failure to fulfill its

contractual obligations unless "the [tort] wrong ascribed to the defendant [is] the gist of the

action with the contract being collateral."  Phico Ins. Co. v. Presbyterian Med. Servs. Corp., 663

A.2d 753, 757 (Pa. Super. Ct. 1995).  Plaintiff counters by arguing that the Court should follow

Raab v. Keystone Insurance Co., 412 A.2d 638 (Pa. Super. Ct. 1979), which Plaintiffs contend

holds that a plaintiff alleging improper or negligent performance of a contract may pursue claims

in both negligence and contract, whereas a plaintiff alleging nonperformance would be restricted

to pursuing a claim for breach of contract.  However, the cases cited by Plaintiff to support their

contention have been effectively disavowed by subsequent authority.  The Court concludes that

under prevailing Pennsylvania law, Plaintiffs are restricted to bringing their claims in contract

rather than tort.

In Raab v. Keystone Insurance Co., 412 A.2d 638 (Pa. Super. Ct. 1979), the Pennsylvania

Superior Court held that whether a plaintiff could maintain a suit in both contract and tort turned

upon whether a complaint alleged improper performance of a contract, or total non-performance.

In Raab, the author of the Superior Court's opinion – a single judge not joined by any other

member of the three-judge panel – found that where a plaintiff alleged improper performance of

a contract, the plaintiff would be permitted to maintain a suit alleging both breach of contract

and negligence, but where a plaintiff alleged total non-performance under a contract, the plaintiff

was limited to pursuing a claim for breach of contract.  Notwithstanding that the court's decision

in Raab was an opinion of a single panelist, subsequent courts treated Raab as precedential and

adhered to this distinction.  See, e.g., Grode v. Mutual Fire, Marine, & Inland Ins. Co., 623 A.3d

933 (Pa. Commonw. 1993); Fink v. Delaware Valley HMO, 612 A.2d 485 (Pa. Super. Ct. 1992);

Hirsch v. Mt. Carmel Dist. Ind. Fund., Inc., 526 A.2d 422 (Pa. Super. Ct. 1987).  However, as

discussed below, it is clear following Bash and Phico that Raab is no longer of significant

relevance.

In Bash v. Bell Telephone Co., 601 A.2d 825 (Pa. Super. Ct. 1992), the plaintiff and Bell

Telephone had entered into a contract regarding an advertisement to be published in the Yellow

Pages.  The defendant failed to publish the advertisement and the plaintiff brought suit alleging

that the defendant was liable for both breach of contract and negligence.  The Pennsylvania

Superior Court affirmed the trial court's order dismissing the tort claim, explaining as follows:

> Although they derive from a common origin, distinct differences
> between civil actions for tort and contract breach have developed at
> common law.  Tort actions lie for breaches of duties imposed by law
> as a matter of social policy, while contract actions lie only for
> breaches of duties imposed by mutual consensus agreements between
> particular individuals. . . . To permit a promisee to sue his promisor
> in tort for breaches of contract inter se would erode the usual rules of
> contractual recovery and inject confusion into our well-settled forms
> of actions.

Id. at 829 (citations omitted).  In Bash, the court found that the Yellow Pages advertisement was "a matter of private contract law" and concluded that Pennsylvania law required that the plaintiff enforce his claims through contract rather than tort.  Id.

Subsequently, in Phico Insurance Co. v. Presbyterian Medical Services Corp., 663 A.2d 753 (Pa. Super. Ct. 1995), the Superior Court was presented with a question of whether a complaint brought against a Phico-insured stated claims that sounded in tort or contract or both. In that case, Phico's insured had entered into a contract to provide consulting services to a nursing home and had been sued in both tort and contract for allegedly performing the services improperly.  Thereafter, Phico brought a declaratory action seeking entry of an order that the insurer did not have an obligation to defend or indemnify its insured for the claims in the underlying action because the claims arose in contract rather than tort.  The insurance policy between Phico and its insured obligated the insurer to provide coverage only for torts.  The Superior Court concluded that because the underlying action arose out of the performance of the contract, the contract "unquestionably was not collateral to any of [the] claims."  Phico, 663 A.2d at 758.  Accordingly, the court determined that the insurer had no duty to defend in the underlying action.

The panel in Phico noted that notwithstanding subsequent courts' reliance upon the decision, the rule announced in Raab was, in fact, not precedential authority due to the fact that it represented the opinion of a single judge,[4] and the Phico court explicitly rejected the misfeasance/nonfeasance test that the opinion purported to establish:

---

[4]  Specifically, the panel stated that "Raab technically possesse[s] no precedential authority since it represented the viewpoint of only one member of a three-judge panel."  Phico, 663 A.2d at 757.

> We believe the simple rule expressed in <u>Raab</u> is inadequate to determine the true character of a claim. Although the rule certainly sets forth a bright and easily discernable line for considering the nature of a claim, it is not difficult to imagine many agreement-based complaints which may be characterized as sounding in tort when they more properly should be seen as contractual. Consequently, since <u>Raab</u> possesses no precedential authority, we do not follow it.

663 A.2d at 757 (footnotes omitted).  In another section of the court's opinion, it stated more directly its rejection of the distinction announced in <u>Raab</u>: "we do not believe that [<u>Raab's</u>] misfeasance/nonfeasance rule possesses any vitality."  <u>Id.</u> at 757 n.1.  Instead, the Superior Court adhered to the "gist of the action" rule espoused in <u>Bash</u> and concluded that Phico had no duty to defend its insured in the underlying action because the action arose out of the performance of the contract and, therefore, the contract "unquestionably was not collateral to any of [the] claims." <u>Id.</u> at 758.

Subsequent decisions from the Superior Court make clear that Pennsylvania courts follow the <u>Bash</u> and <u>Phico</u> courts in applying the "gist of the action" rule.  For example, in 1996, the Pennsylvania Superior Court, sitting en banc, found that the test articulated in <u>Raab</u> "inadequate" and instead followed the decisions from <u>Bash</u> and <u>Phico</u> "which we believe more appropriately address[] the characterization issue."  <u>Redevelopment Auth. v. Int'l Ins. Co.</u>, 685 A.2d 581, 590 (Pa. Super. Ct. 1996).  In 2003, the Superior Court again reaffirmed that Pennsylvania adheres to the "gist of the action rule" and that the contrary rule announced in <u>Raab</u> is of no continuing value.  <u>See</u> <u>Pittsburgh Const. Co. v. Griffith</u>, 834 A.2d 572, 581-83 (Pa. Super. Ct. 2003) ("a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts."); <u>see also</u> <u>Etoll, Inc. v. Elias/Savion Advertising, Inc.</u>, 811 A.2d 10, 14 (Pa. Super. Ct. 2002) (recognizing

that although the "gist of the action" rule had not been adopted by the Pennsylvania Supreme

Court, the rule had been followed by the Superior Court since <u>Bash</u>, and explaining that "the

doctrine is designed to maintain the conceptual distinction between breach of contract claims and

tort claims[]" and that "[a]s a practical matter, the doctrine precludes plaintiffs from re-casting

ordinary breach of contract claims into tort claims.").[5]

Consideration of the foregoing convinces the Court that Pennsylvania law adheres to the

"gist of the action" doctrine, and Plaintiffs' contrary reliance upon the misfeasance/malfeasance

distinction as applied in <u>Raab</u> is misplaced.[6]   It is also clear, following a careful reading of the

complaint, that Plaintiffs' claims all arise directly from one or more of the contracts that were

---

[5]   In 2005, the Superior Court explained the gist of the action doctrine as follows:

> Persuasive authority interpreting Pennsylvania law has restated the
> gist of the action doctrine in a number of similar ways. These courts
> have held that the doctrine bars tort claims: (1) arising solely from a
> contract between the parties; (2) where the duties allegedly breached
> were created and grounded in the contract itself; (3) where the
> liability stems from a contract; or (4) where the tort claim essentially
> duplicates a breach of contract claim or the success of which is
> wholly dependent on the terms of a contract.

<u>Hart v. Arnold</u>, 884 A.2d 316, 340 (Pa. Super. Ct. 2005) (citations omitted).

[6]   Although the parties have not identified any decision from the Pennsylvania Supreme
Court regarding this issue, the Court anticipates that the Pennsylvania Supreme Court would
follow the reasoning of the <u>Bash</u> and <u>Phico</u> cases and adopt the gist of the action rule.  Judge
Reed from the Eastern District of Pennsylvania has similarly predicted that the Pennsylvania
Supreme Court would follow these decisions.  <u>See</u> <u>Good v. Am. Heritage Life Ins. Co.</u>, No. 02-
3725, U.S. Dist. LEXIS 18310, *6 n.2 (E.D. Pa. Sept. 27, 2002); <u>Caudill Seed & Warehouse Co.,
Inc. v. Prophet 21, Inc.</u>, 123 F. Supp. 2d 826, 833 n.11 (E.D. Pa. 2000).  Moreover, absent a
compelling basis to find that the Pennsylvania Supreme Court would hold otherwise, the rulings
of the Pennsylvania Superior Court must be accorded significant weight and should not be
disregarded.  <u>See</u> <u>U.S. Underwriters Ins. Co. v. Liberty Mut. Ins. Co.</u>, 80 F.3d 90, 93 (3d Cir.
1996) (citations omitted).

entered into regarding the property management services that were to be provided for Plaintiffs' benefit.  Additionally, the Court does not find that Plaintiffs have alleged that Defendant is liable in tort for the breach of a duty separate and apart from the duties allegedly imposed under the terms of these contracts.  Accordingly, the Court does not find that the contracts at issue are collateral to Plaintiff's tort claim, and under the "gist of the action" rule, Plaintiffs' tort claim must be dismissed.

### B.    Plaintiffs' CPL Claim

In Count III, Plaintiffs bring a claim under the CPL predicated on their allegation that Defendant made certain contractual representations that it did not intend to perform, which caused a "likelihood of misunderstanding" that Plaintiffs contend is actionable under the CPL's catch-all provision, 73 Pa. Cons. Stat. § 201-2(4)(XXI).  Defendant asserts that because the Plaintiffs were not direct purchasers of any of the services that were to be provided under the contracts at issue, they are precluded from bringing a claim under the CPL.

The CPL provides a private cause of action to "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful" elsewhere in the statute.  73 Pa. Cons. Stat. § 201-9.2.[7]  Defendant argues, as a threshold matter, that Plaintiffs did not "purchase or

---

[7]  The relevant section of the CPL provides as follows:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful [elsewhere in the statute] may bring a

lease" the services that Defendant was contracted to provide and therefore lack standing to bring a claim under the CPL.

Determining who constitutes a "purchaser" for purposes of the CPL is not as straightforward as it might appear.  As an initial matter, the CPL does not provide a definition of what constitutes a "purchase" for purposes of the statute.  As discussed below, the Pennsylvania Superior Court has made clear that privity is not required to be considered a purchaser under the statute, and has construed the language of the CPL broadly to effect its underlying purpose of enhancing the rights of consumers.  Valley Forge Towers South Condominium v. Ron-Ike Foam Insulators, Inc., 574 A.2d 641, 647 (Pa. Super. Ct. 1990) (holding that liability under the CPL may extend "to those in privity, those specifically intended to rely upon the fraudulent conduct, and those whose reasonable reliance was specifically foreseeable" and that such a construction of the statute is "more consonant with the remedial focus of the [CPL] on eradicating fraudulent business practices.").  Nevertheless, as Defendant notes, the Third Circuit has rejected the arguments of plaintiffs who have advocated for either an extraordinarily relaxed or expansive definition of what constitutes a purchaser under the CPL, in each case emphasizing that to maintain a claim under the CPL the plaintiff must be a purchaser or lessee and have, at minimum, engaged in commercial dealing with the defendant.  See, e.g., Gemini Physical

---

private action, to recover actual damages or one hundred dollars ($ 100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($ 100), and may provide such additional relief as it deems necessary or proper.

73 Pa. C.S. § 201-9.2.

Therapy and Rehabilitation, Inc. v. State Farm Mutual and Automobile Insurance Co., 40 F.3d 63, 65 (3d Cir. 1994) ("the CPL contemplates as the protected class only those who purchase goods or services, not those who may receive a benefit from the purchase"); Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (noting that "the [CPL] unambiguously permits only persons who have purchased or leased goods or services to sue" and commenting that "[h]ad the Pennsylvania legislature wanted to create a cause of action for those not involved in a sale or lease, it would have done so.").[8]

Plaintiffs contend that the reasoning of the Pennsylvania Superior Court in Valley Forge Towers provides support for their assertion that they should be considered purchasers capable of maintaining suit against Defendant under the CPL.  The relevant facts of Valley Forge Towers are as follows.  Ron-Ike Foam Insulators contracted to sell a roofing membrane to the condominium association that was manufactured by another company named Mameco.  The contract required Ron-Ike to install the roofing membrane, and provided that Mameco would give the association a ten-year warranty on the product.  Mameco manufactured the roof according to specifications in the contract between Ron-Ike and the association.  Thereafter, Ron-Ike installed the roof and Mameco issued the warranty directly to the association.  Two

---

[8] Defendant also cites to several district court decisions reaching similar conclusion on different facts.  See, e.g., Lawrence v. Trans Union, LLC, 296 F. Supp. 2d 582, 592 (E.D. Pa. 2003) (plaintiff not permitted to maintain CPL action against a credit reporting agency for alleged misreporting of information where plaintiff had no commercial dealings with the defendant and did not claim to have purchased goods or services from the agency); World Wrestling Fed'n Entm't, Inc. v. Big Dog Holding, Inc., 280 F. Supp. 2d 413, 446 (W.D. Pa. 2003) (plaintiff lacked standing to sue under the CPL where it did not allege that it purchased defendant's merchandise); Gottlieb v. Tropicana Hotel & Casino, 109 F. Supp. 2d 324, 331-32 (E.D. Pa. 2000) (a Pennsylvania gambler at a New Jersey casino could not maintain an action under CPL for casino's failure to pay out a prize the gambler claimed to have won where plaintiff did not purchase anything from the casino).

years later the roof began to leak.  After trying unsuccessfully to have the roof repaired, the association sued both Ron-Ike and Mameco for breach of express and implied warranties, and for violation of the CPL.  Mameco asserted that the association was not a "purchaser" under the CPL because it had not bought the roof from Mameco and the trial court agreed, holding that the association could not be a "purchaser" because it was not in strict privity with Mameco.

The Pennsylvania Superior Court reversed, finding that strict privity was not required in order to maintain suit under the CPL, and holding that liability under the statute extended to "those in privity, those specifically intended to rely upon the fraudulent conduct, and those whose reasonable reliance was specially foreseeable."  Valley Forge Towers, 574 A.2d at 647. Therefore, the court concluded that the association's "purchase of the roof from Ron-Ike, which was warranted directly by Mameco, was a 'purchase' giving rise to liability on the part of Mameco . . . for failure to honor its warranty, notwithstanding the lack of direct privity."  Id.  In reaching this conclusion, the court examined the legislative history of the CPL and determined that its purpose was to "substantially enhance" the remedies available to consumers who were harmed by unfair or deceptive business practices.  Id. at 646.  The court underscored that the privity defense had eroded over time to the point where a plaintiff could sue a contractor for fraud if the plaintiff was "specifically intended" to rely on that conduct or when the reasonable reliance of such a third party was "specifically foreseeable."  Id. (citation omitted).  Finally, the court expressed concern that if the CPL required strict privity, disreputable subcontractors could avoid liability by leaving the general contractor to pay outstanding judgments.  Id. at 646-47.  In the instant case, Plaintiffs contend that application of the reasoning of Valley Forge Towers to the facts of their case compels the conclusion that they qualify as "purchasers" under the CPL.

In contrast, Defendant argues that <u>Valley Forge Towers</u> extends no further than its specific facts, maintaining that "[t]he sole exception to [the] rule appears to be that purchasers of improvements to real property from a general contractor can sue entities that provided components to the general contractor, at least when the component manufacturer provides a warrant [sic] to the end purchaser." (Doc. No. 14, at 12.) Defendant contends that "a clear and important fact" in <u>Valley Forge Towers</u> was that the condominium association had actually "purchased" the roof membrane because the price of the roof was included in the construction contract between the association and Ron-Ike, the general contractor who procured the roof from Mameco. Citing to several decisions from the Third Circuit and lower courts, Defendant argues that "[s]ubsequent efforts to expand the exception beyond those basic facts have proven unsuccessful." (<u>Id.</u>)

Following careful review of <u>Valley Forge Towers</u> and the federal decisions on which Defendant relies and which are discussed at length below, the Court finds that (1) <u>Valley Forge Towers</u> cannot properly be interpreted as limited exclusively to its particular set of facts or as narrowly as Defendant suggests and (2) the federal decisions offered in support of Defendant's argument involve facts that are distinguishable from those at issue in this case.

At no point in <u>Valley Forge Towers</u> does the Pennsylvania Superior Court state, or even suggest, that its interpretation of the CPL and its conclusion that the condominium association should be considered a purchaser notwithstanding its lack of privity with Mameco should be as limited as Defendant suggests. To the contrary, the Superior Court found that the historical context of the CPL indicated that the "the law was passed to substantially enhance remedies available to consumers as the result of unfair or deceptive business practices, specifically

including the failure to comply with any written guaranty or warranty" and such legislative intent weighed against interpreting the statute narrowly in a way that would "hinder the act's remedial effects, or provide a simple expedient for evasion of its force."  Valley Forge Towers, 574 A.2d at 646.  In concluding that the condominium association qualified as a purchaser, the Superior Court accepted as true the plaintiff's allegation that the roofing contractor purchased the roofing material that was the subject of the litigation from a third party in accordance with the specifications set forth in the contract between the association and Ron-Ike, and that Mameco issued a warranty directly to the condominium association and therefore knew that the association was the intended beneficiary of the warranty.  Id.

Moreover, the federal cases Defendant cites that have declined to extend Valley Forge Towers are distinguishable on their facts, as the plaintiffs in those cases could in no way be considered purchasers and had no, or very little, actual commercial dealing with the defendants. In Katz v. Aetna Casualty and Surety Co., 972 F.2d 53 (3d Cir. 1992), one of the plaintiffs was injured in an automobile accident and he and his wife sued the driver's insurance company, alleging that the insurer intentionally concealed the existence of an excess liability policy that had been issued by another insurance company.  It was undisputed that the plaintiffs had not purchased an insurance policy from the defendant, and indeed had absolutely no commercial dealings with the insurer.  Instead, the plaintiffs contended that they were entitled to sue under the CPL solely on the basis of their allegation that their reliance on the defendant-insurer's conduct was reasonable and specifically foreseeable.  The Third Circuit disagreed, and explained why Valley Forge Towers did not support the plaintiffs' argument:

> Although Valley Forge Towers held that strict privity is not always
> an element of the private cause of action, there is no indication that

the court would have extended the private cause of action to a plaintiff lacking any commercial dealings with the defendant. Indeed, the plaintiff condominium association contracted to buy a Mameco roof from Ron-Ike, and Mameco followed specifications set forth in that contract and sent the plaintiff a warranty directly. Here, the Katzes conducted no business whatsoever with either Applebaum or Aetna. Aetna's alleged deceit did not induce the Katzes to buy or conduct some other market transaction. For these reasons, the Katzes are not "purchasers" for purposes of the CPL.

Katz, 972 F.2d at 57.

In Gemini Physical Therapy and Rehabilitation, Inc. v. State Farm Mutual Automobile Insurance Co., 40 F.3d 63 (3d Cir. 1994), the plaintiff was a health care provider that claimed to be an assignee of its plaintiffs' rights under certain insurance policies, and alleged that the defendant-insurer refused to pay the patients' medical bills. The district court dismissed the plaintiff's claims under the CPL for lack of standing and the Third Circuit affirmed. In its opinion, the Third Circuit explained that "[t]he CPL contemplates as the protected class only those who purchase goods or services, not those who may receive a benefit from the purchase." Gemini Physical Therapy, 40 F.3d at 65. The Third Circuit presumed that the plaintiff may have been "indirectly injured," but this did not change the fact that plaintiff was "not a purchaser or consumer of goods or services under the CPL" and therefore had no private right of action. Id. The Third Circuit also rejected the plaintiff's argument that it had standing because it had allegedly taken assignment of its patients' claims (1) because the plaintiff was merely a commercial purchaser of the insureds' claims and took assignment only of the patients' rights under their insurance contracts, and (2) because the Third Circuit predicted that the Pennsylvania Supreme Court would not infer that the plaintiff took an assignment of the patients' potential claims under the CPL. Id. at 66.

16

Most recently, in <u>Balderston v. Medtronic Sofamor Danek, Inc.</u>, 285 F.3d 238 (3d Cir. 2002), the Third Circuit affirmed the dismissal of a suit brought under the CPL by an orthopedic surgeon against a manufacturer of surgical screws that the plaintiff had used in spinal fusion surgeries.  The plaintiff-physician brought his suit against the manufacturer solely under the CPL, claiming that the defendant misrepresented the FDA's approval status of defendant's screws.  The plaintiff claimed that he had been misled as to the FDA's approval status, and was subsequently exposed to lawsuits that forced him to provide uncompensated deposition and trial testimony both as a defendant and an expert witness on the defendant's behalf.  Nevertheless, the district court found that the plaintiff's patients, and not the plaintiff, had purchased the screws and therefore concluded that the plaintiff lacked standing under the CPL.[9]  The district court rejected the plaintiff's contention that he brought suit as the "legal representative" of his patients as their "purchasing agent," finding instead that the plaintiff had brought the litigation on his own behalf for his own losses and that his patients had "no interest in [the] litigation whatsoever[.]"  <u>Id.</u> at 240.

On appeal, the Third Circuit affirmed.  The Court disagreed with the plaintiff's argument that because he was allegedly "necessarily and intimately involved" in the purchasing transactions as his patients' surgeon that he should be considered a "purchaser" under the CPL. The Court noted that the plaintiff unequivocally acknowledged that he did not pay for the surgical screws, as he admitted that "[t]he purchase is by the consumer, the patient.  Plaintiff

---

[9]  Alternatively, the district court held that the plaintiff could not qualify as a purchaser under the CPL because any purchase he would have made was for business purposes, not "personal, family or household" use as required under the CPL.  285 F.3d at 240.  The Third Circuit also agreed with this conclusion.  <u>Id.</u> at 242.

merely designates that screw for use by the consumer after obtaining informed consent prior to surgery.  Neither plaintiff nor his practice are ever billed for the screw and do not pay for it."  Id. at 241 n.6.  Moreover, the Court disagreed with the plaintiff's argument that the reasoning of Katz supported his claim to be a "purchaser," and found that in Katz the plaintiffs had claimed to be intended beneficiaries of the purchased insurance, which the Court considered to be a "closer relationship that Dr. Balderston's alleged relationship to the patients' purchases of the defendants' screws."  Id. at 241.  Finally, the Court noted that it found no "principled distinction" between plaintiff's case and that presented in Gemini Physical Therapy, and found unpersuasive the plaintiff's argument that Valley Forge Towers supported his claim that he had standing to maintain an action under the CPL in a purely representational capacity.  Id. at 241-42.

The distinctions between the facts relevant to the foregoing decisions from the Third Circuit and the largely undisputed facts of the instant case are numerous.  Whereas in Katz, Gemini Physical Therapy, and Balderston the plaintiffs could in no way be considered purchasers or even consumers of the goods or services at issue, Plaintiffs' allegations and Michele Spiro's attestations strongly support their argument that they constitute "purchasers" of the property-management services that Defendant contracted to provide with respect to their home.  In her unsworn declaration submitted in opposition to Defendant's motion for partial summary judgment, Michele Spiro attested that her employment contract with DOD obligated DOD to obtain property management services on her behalf, that the value of such services was compensatory to Ms. Spiro in addition to her base pay, and that the value of the payment for the property-management services constituted income taxable to her for the years 2001, 2002, and

18

2003.[10]  The Court agrees with Plaintiffs that these facts compel the conclusion Plaintiffs should

be considered the purchasers of the property-management services, and that to find otherwise

would allow form to tower over substance, as the funds that were used to pay Defendant for its

services were properly considered taxable income earned by Ms. Spiro and merely passed to

Defendant through Ms. Spiro's employer rather than from her directly.

Furthermore, unlike the plaintiffs in Katz, Gemini Physical Therapy, and Balderston,

Plaintiffs actually had contractual or commercial dealings with Defendant and were consumers

of Defendant's services.  Michele Spiro entered into a contract with Defendant that obligated

Defendant to manage the Property during the period she and her husband were relocated to

Japan.  Although Defendant argues that Plaintiffs have made no claim under the Spiro Contract

between Michele Spiro and Defendant, the Court cannot agree that this is clear.  As noted above,

the Court finds that Plaintiffs intended to attach a true and correct copy of the Spiro Contract to

their complaint, but inadvertently attached a different contract instead.  Defendant has provided a

true and correct copy of the Spiro Contract as Exhibit B to the Unsworn Declaration of Thomas

Goodkind, and Plaintiffs have asserted that their claims are predicated, in part, on Defendant's

obligations under this contract.  In Plaintiffs' claim for damages under the CPL, they allege that

Defendant misrepresented that it would provide, inter alia, the following services: "As to each

prospective tenant, [Defendant] will require and perform a credit check, references, prior rental

history, the verification of salary and employment and in general, provide a record of

information relevant to the prospective tenant's desirability as a tenant."  (Compl. ¶ 64.)  This

---

[10]  In addition, Ms. Spiro attested that her employment contract with DOD provided that
she had the option of engaging a company other than Defendant to provide property management
services, and that DOD would have reimbursed her at least in part if she made such election.

exact representation is, in fact, contained within the Spiro Contract as part of Defendant's (or its predecessor-in-interest's) obligations.  (Spiro Contract, ¶ 3(i).)

Finally, it appears undisputed that the Defendant's property-management services were rendered specifically for Plaintiffs' benefit pursuant to the various contracts that were executed, and Plaintiffs' reliance on Defendant's representations would therefore appear to be not merely reasonably foreseeable, but specifically foreseeable.  This places Plaintiffs in a far different relationship with Defendant than the distant or tangential relationships between the plaintiffs and defendants in Katz, Gemini Physical Therapy, and Balderston.

For the foregoing reasons, the Court concludes that Plaintiffs should be considered "purchasers" within the meaning of the CPL, notwithstanding the fact that they did not personally tender any money to Defendant for Defendant's property management services.[11] Moreover, Plaintiffs were not merely parties with a hypothetical foreseeable interest in Defendant's services, but were the very people for whose benefit the services were to be rendered, and Michele Spiro directly entered into a contract with Defendant regarding the services to be provided with respect to the Property and thus had a commercial or contractual relationship with Defendant that would cause her reliance upon Defendant's representations to be specifically foreseeable.  As Defendant has argued that it is entitled to summary judgment on the CPL claim only on the grounds that Plaintiffs could not be considered purchasers, and the

---

[11] Although neither precedential nor binding, the Court notes that it has identified decisions from other district courts within this circuit that have similarly concluded that plaintiffs could be considered purchasers notwithstanding that they did not directly purchase or lease the goods or services in question.  See, e.g., Caciolo v. Masco Contractor Servs. East, Inc., No. 04-962, 2004 U.S. Dist. LEXIS 23705 (E.D. Pa. Nov. 22, 2004); Taylor v. Nelson, No. 02-6558, 2003 U.S. Dist. LEXIS 6796 (E.D. Pa. April 1, 2003).

Court having found that Plaintiffs should be considered purchasers for purposes of the statute, Defendant's motion for summary judgment will be denied with respect to the CPL claim.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHELE L. SPIRO and** | : | |
| **RANDY WILFONG,** | : | **Civil Action No. 1:06-CV-834** |
| | : | |
| **Plaintiffs** | : | **(Chief Judge Kane)** |
| | : | |
| **v.** | : | |
| | : | |
| **PRUDENTIAL RELOCATION, INC.,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

**AND NOW**, this 1st day of March 2007, upon consideration of Defendant Prudential

Location, Inc.'s motion for partial summary judgment (Doc. No. 13), and for the reasons fully

set forth in the within memorandum, **IT IS HEREBY ORDERED THAT** the motion is granted

in part and denied in part as follows:

1. Defendant's motion for summary judgment on Count II of the complaint alleging negligence is **GRANTED**.

2. Defendant's motion for summary judgment on Count III of the complaint brought under the catch-all provision of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-2(4)(XXI), is **DENIED**.

3. The Clerk of Court shall refrain from entering judgment in favor of Defendant with respect to Count II of the complaint until the conclusion of this action.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania